(No. 78-CC-1570— ▮▮▮▮▮)

VIRGINIA KOMESHAK, Administrator of the Estate of Louis John Komeshak, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 26, 1985.*

MICHAEL A. KATZ, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ and SUE MUELLER, Assistant Attorneys General, of counsel), for Respondent.

POCH, J.

This claim, sounding in tort, seeks damages for the wrongful death of Claimant's intestate, who committed suicide, and is based on the alleged negligence of Respondent. The Claimant seeks recovery based on the theory that the suicide of Claimant's intestate which occurred on February 3, 1978, was caused by negligent acts or omissions of the State in improperly supervising Claimant's decedent, improperly failing to render proper care for Claimant's decedent when the State knew that Claimant's decedent was likely to commit suicide, or negligently observing Claimant's decedent, when in the exercise of reasonable care Claimant's decedent should have been observed due to knowledge that he was likely to commit suicide.

A hearing was conducted before Commissioner

Rath, who heard testimony of witnesses and received evidence. He has duly filed his report, together with the transcript of evidence, exhibits and briefs now before us.

The evidence adduced in support of Claimant's theories of recovery consisted entirely of the testimony of Dr. Thwan Han, a psychiatrist from Granite City, Illinois. Dr. Han testified in response to a lengthy hypothetical question based on the departmental reports in this case that, in his opinion, suicide precautions should have been taken with respect to Claimant's decedent. Dr. Han would have specified consistent supervision for at least a 24-hour period after the psychologist's initial interview when Claimant's decedent arrived at Menard Correctional Center. Dr. Han did not ever treat Claimant's decedent and had not, prior to testifying, reviewed the clinical records of the decedent. Dr. Han had reviewed only the inquest testimony of the psychologist. Dr. Han was not familiar with Menard Correctional Center, and is not familiar with their procedures. Dr. Han admitted knowing nothing about the prison system and had not reviewed Claimant's decedent's records on previous alleged suicide attempts.

In response to questions of the commissioner, Dr. Han testified that the fact that Claimant's intestate did not have a plan of suicide did not exclude a serious danger. Further Dr. Han admitted that anger evidenced in the presence of the psychologist interviewing Claimant's intestate could have been interpreted as a look to the future and a will to live.

Respondent's agent, Officer Faust, recalled observing Claimant's intestate on February 3, 1978, at the reception and classification unit at Menard Correctional

Center. He was seen going to breakfast and seen going out to see the psychologist. He behaved normally, like everyone else on the unit. He was next seen arriving back from the psychologist at about 2:20. He was placed in his cell and was acting normally. He was not crying, praying or behaving strangely. Five minutes later he was observed in an inmate count that is taken about five times a day. The inmates are personally observed during the count at approximately 2:30 and he was sitting on his bed. Shortly thereafter an inmate reported that Respondent's agent should observe something and Claimant's decedent was found hanging in his cell. The door to the cell was opened and two inmate workers were instructed to get Claimant's decedent down while Respondent's agent called for medical attention.

Claimant's decedent was found to be dead and could not be revived.

Claimant argues that the law in Illinois obligates a jailer to exercise ordinary and reasonable care for the preservation of prisoners, including the duty to guard against the possibility of suicide. *Porter v. County of Cook* (1976), 42 Ill. App. 3d 287, 355 N.E.2d 561.

Claimant argues that the combination of an indication of suicidal tendencies combined with the stress of being incarcerated "militates against allowing a prisoner to keep shoelaces and belts." Further Claimant argues that the findings made by the psychologist in his interview with Claimant's decedent should have, on the basis of the testimony of Dr. Han, moved Respondent to give constant supervision to Claimant's decedent for 24 to 48 hours.

The burden of proof is on the Claimant to warrant the imposition of liability and negligence against Respondent. Respondent owes its prisoners the duty of

protection and must exercise reasonable care toward the prisoners as the prisoners' known conditions may require, including a guarding of the prisoners from dangers due to mental incapacity and the risk of suicide. The State is not, however, an insurer of the safety of the prisoners under the care of its Department of Corrections. *Estate of Gianos v. State* (1975), 30 Ill. Ct. Cl. 373; *Reynolds v. State* (1983), 35 Ill. Ct. Cl. 647.

In this case, the Claimant has failed in her burden of proof. The evidence reveals that Respondent did exercise ordinary and reasonable care under the circumstances of this case. Claimant's intestate was a new inmate at Menard, and when he asked to see a psychologist or psychiatrist, he was provided with that service. Claimant's intestate was observed behaving normally and was seen by a psychologist for a lengthy interview. As a result of the interview, the psychologist concluded that Claimant's intestate was not a danger to himself and there was no reason to take precautions (inquest testimony of psychologist Richard Trafton).

After returning from the psychologist's interview, Komeshak was observed behaving normally and sitting on his bed.

We agree with Respondent that Respondent was not indifferent to the needs of Claimant's intestate and did not violate its duty of reasonable care.

Testimony of Dr. Han, Claimant's psychiatrist, does not create sufficient evidence in this record with which to charge Respondent with negligence. Dr. Han's testimony agreed, in many particulars, with the testimony of the State psychologist as regards reasonable reactions to the interview of Claimant's intestate.

In summary we find that the record shows that Respondent exercised ordinary and reasonable care for the preservation of the inmate's health and life under the circumstances of this case.

While Komeshak's death was unfortunate, we do not think it was foreseeable and the evidence is insufficient for us to make an award.

Claim denied.